**STERN, Admr v CLEVELAND (city)**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12578.  Decided Feb 20, 1933

Harry C. Gahn, Cleveland, for plaintiff in error.

W. George Kerr, Cleveland, and Walter Booth, Cleveland, for defendant in error.

McGILL, J.

It is to be noted at the outset, that the employees of the City placed this new excelsior on the vacant lot the morning of the accident. While it is obvious that the pile of excelsior is not in any way dangerous in itself, it is equally obvious that it would be alluring to these boys as a playhouse. The driver of the ten ton City truck, in disregard of the sheet metal standing on an incline in front of this excelsior and without knowing who or what was back of it, backed this truck over the sheet metal and into this pile of excelsior, causing the death of these boys.

As to contributory negligence, we think that the evidence fairly shows that this was more of a playground for boys than a dump, and that these boys had a right to rely on the "No Dumping" signs which were placed on and about the premises. While some dumping had occurred on this part of the lot, the evidence showed that boys habitually played there. This was not a public street nor a place where the boys could reasonably anticipate such a danger.

In the case of **Ziehm v Vale, 98 Oh St 306**, (1918), the Supreme Court held that the principle of non-liability does not apply where the statical condition of the premises is made perilous by the careless and negligent operation thereof by the owner.

In the recent case of **Coy, an infant, v The Columbus, Delaware and Marion Electric Company, 125 Oh St, 135** (1932), the law is stated as follows:

"1. Where the statical condition of premises is made perilous by the active and negligent operation of apparatus thereon by the person owning or controlling the same, a liability arises for injury resulting therefrom."

In this case the City changed the statical condition of the premises by placing this large pile of excelsior on the lot and then backing over the sheet metal and into this pile of excelsior with a heavy truck. This, we believe, was a dangerous instrumentality, making the statical condition perilous for the boys. Even if the sheet metal had not been propped up in front of the excelsior as the evidence shows, a majority of this court has grave doubt as to the right of the truck driver to back into the premises of another and into this pile of excelsior without knowing what was on, in or under it. But with this sheet metal

propped up in front of the excelsior, the exercise of ordinary care would certainly require the driver to stop before backing over the sheet metal and the excelsior which was visible on the side.

If there had been a tent there, or if a canvass had been spread over the pile of excelsior, no one would question the duty to stop before backing into the tent or on to the canvass. The sheet metal standing at an incline ought to be sufficient notice that the metal had been placed in a partially upright position for some purpose.

In the case of **Jacob Laub Baking Co. v Middleton, 116 Oh St 106,** (1928), it is said by Jones, J:

"If, on the other hand, the proof and inference are such that fair minded men could reasonably arrive at different conclusions therefrom, the facts in issue are tryable to the jury."

We believe that in this case, under all the facts and circumstances, fairminded men could reasonably arrive at different conclusions, and that under the scintilla rule the plaintiff was entitled to have the case submitted to the jury.

Concerning the question of the boys being trespassers, there is no evidence to show that The Cleveland and Sandusky Brewing Company had objected to boys playing on these premises for many years, and for aught that is shown, the boys were licensees by acquiescence, if not by actual permission. In any event, there is no claim by the owners of the vacant lot that the boys were trespassers, nor is there any evidence that these boys, or other boys, had ever been warned by anyone to not play upon these premises.

It is said in 45 Corpus Juris, page 786:

"In order that one may avoid liability for injury to another on the ground that the latter was a trespasser, it is necessary that the injured person should have been a trespasser as against the person sought to be charged with liability, and the fact that the injured person was a trespasser is not material where the trespass involved no interference with the rights of the person sought to be charged. It has been stated broadly that in order to relieve one from liability on the ground that the injured person is a trespasser, the premises must belong to the person whose negligence is complained of, or such person must have the right of control of the premises.

"Another similar statement of the rule is that the defense of non-liability for injury to a trespasser is personal to the owner of the premises trespassed upon, and does not inure to the benefit of strangers to the title, owners of adjoining property, or other trespassers."

See also **Rock Run Coal Co. v Chartiers Oil Co., 29 O.C.A. 58,** (1916); Walker v Southern Bell Telephone and Telegraph Company, 95 So. Carolina, 188, (1912).

The evidence in this case showed that for ten or eleven years boys had habitually played upon this vacant lot.

In 45 Corpus Juris, at page 793, with reference to licensees, it is said:

"Habitual or customary use of property for a particular purpose without objection from the owner, may give rise to an implication of consent to such use so that the users have the status of licensees."

While the general rule is that the owner of property owes no affirmative duty of care with respect to mere licensees, and no duty to protect him, the rule is subject to a number of exceptions, such as the duty not to set traps for a licensee or to expose him to hidden perils, or to use care to avoid injuring him after his presence is or should be discovered, or not to injure him through active negligence. 45 Corpus Juris, 796.

In this case there was active negligence; the presence of the boys at least should have been discovered and there is considerable weight to the view that the conditions amounted to a trap. Regarding this situation as a trap, it might be said that the trap was set when the large pile of excelsior was placed on the vacant lot and the trap was sprung when the truck backed over the sheet metal and killed the boys.

But there is a further consideration concerning the liability of the City for injuries to these boys whom we consider as licensees. In 45 Corpus Juris at page 808 we find the following:

"It is, however, necessary, in order that one may take advantage of the rule of non-liability for injuries to licensees, that he should have some rights in the premises on which the injury occurred, superior to the right of the injured person. Accordingly the rule is not available where the injured person was, at the time of the injury, in a public place, or on the premises of a person other than the person sought to be charged, or where the person sought to be charged is a mere stranger."

There was the duty of ordinary care upon the truck driver. Whether or not the driver exercised that degree of care under all of the facts and circumstances upon which reasonable minds might differ, was a question for the jury under the evidence in this case.

In accordance with these views the judgment of the court below is reversed and this cause remanded for further proceedings.

LEVINE, J, concurs.
LIEGHLEY, PJ, dissents.

LEVINE, J, concurring:

I concur in the judgment rendered in this case, and also in the views expressed in this opinion, with the exception of one statement found in the opinion dealing with "the right of the truck driver to back into the pile of excelsior without knowing what was on, in or under it." I am of the opinion that even if this were the only fact disclosed in the record, namely, that the truck driver backed into the premises of another person where there was a pile of excelsior concealing his view so that he did not know what was back of it, on it, or under it, that the jury from that fact alone would be authorized to infer negligent conduct on the part of the truck driver; that a duty devolves upon the truck driver under such circumstances to make certain that there is nothing on such pile of excelsior, under it, or back of it; that he has no right to assume, with his view concealed as it was in this case, that there was nothing on this pile of excelsior, back of it, or under it.

With the added views of this record set forth in the majority opinion, the case as made out for the plaintiff is, of course, much stronger, and there is an additional reason why the trial court should have submitted the case to the jury.